David J. ROBINSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1281S368.

Supreme Court of Indiana.

April 7, 1983.

Susan K. Carpenter, Public Defender of Ind., James G. Holland, Sp. Asst. Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, David J. Robinson, was convicted by a jury of child molesting, a Class B felony, Ind.Code § 35–42–4–3 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a period of twenty years. His direct appeal raises the following five issues:

1. Whether the trial court erred in not granting a change of venue from the county;

2. Whether the trial court erred in overruling defendant's motion to call the jury panel in reverse order in which the individual names were drawn for jury service;

3. Whether the evidence is sufficient to support the verdict;

4. Whether the trial court erred in ruling that the defendant's thirty-year prior conviction for rape could be used for impeachment purposes if the defendant elected to testify; and

5. Whether the trial court erred in increasing the basic ten-year sentence to twenty years because of aggravating circumstances.

A brief summary of the facts most favorable to the state shows that on the evening of May 8, 1980, the defendant, while visiting the victim's mother at the victim's home, performed sexual intercourse on the victim until she bled. The victim was ten years old at the time. After helping the victim dress, the defendant and the victim's

mother drove her to the hospital where the victim underwent surgery to repair a tear in her vagina. When admitted to the hospital the victim was described as being in pain, frightened, sleepy, and "very shocky." Prior to surgery and after surgery the victim told hospital personnel that her assailant was white. Four days later, while still in the hospital, she also told the sheriff that her attacker was white, but then said that wasn't right and identified the defendant, who is black, as her assailant. At trial, the victim identified the defendant and testified that he had strapped her to an ironing board, tied her feet, and raped her while her mother held her down. The victim also testified that the defendant had molested her before but that he had not "put it in as far" and that it had not hurt so much.

## I.

Defendant first alleges that racial prejudice, prejudgment of the defendant's guilt based on prior publicity, and emotional reaction to the nature of the crime made it impossible for the defendant to receive a fair trial in Jay County. Therefore, the defendant contends that the trial court abused its discretion when it refused to grant a change of venue from Jay County. The record shows that the trial court conducted a pretrial hearing on the motion. During the hearing, fifteen people, selected at random, were questioned about their knowledge of the crime and whether the race of the victim and defendant was an issue. Six of the witnesses had not heard about the case. Of the witnesses who had heard or read about the case, no one could remember the specifics of the crime. Only two of the fifteen witnesses seemed to view the case any differently because the victim was white and the defendant was black. Of these two witnesses, one testified that she would not use the defendant's race to convict him and the other testified that her prejudice stemmed from her upbringing in Texas. The other thirteen witnesses indicated that race would not be an issue in determining the defendant's guilt or innocence. Each witness who was asked believed the defendant could receive a fair trial in Jay County.

The grant or denial of a motion for change of venue is within the discretion of the trial court. The ruling will not be disturbed unless it is clear the court exceeded its discretion. *Underhill v. State,* (1981) Ind., 428 N.E.2d 759; *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Haybron v. State,* (1979) Ind., 396 N.E.2d 891. It was for the defendant to show that an impartial jury would be impossible because of the high probability or existence of widespread community bias. *Underhill, supra; Haybron, supra.* The trial court heard and assessed the credibility of the fifteen witnesses and concluded that the defendant could receive a fair trial. This conclusion was within the trial court's discretion. *Mendez v. State,* (1977) 267 Ind. 67, 367 N.E.2d 1081.

The defendant renewed his motion for a change of venue from the county prior to voir dire and was again overruled. The defendant contends that this was error and that the record of the voir dire is evidence of a biased jury. He bases this contention on the fact that five jurors were excused for cause and that some of the jurors had read or heard about the crime when it occurred. The only evidence of potential community bias was the jurors' prior knowledge of the crime. The record indicates, however, that the media coverage occurred immediately after the crime and a year before the trial. There was no evidence of sensationalism at the time of trial. *Cf. Baniszewski v. State,* (1970) 256 Ind. 1, 261 N.E.2d 359. Those jurors who had heard or read about the crime were unaware of any details on which they could prejudge the defendant. Furthermore, the record indicates that those jurors evidencing racial prejudice were excused. The jurors who actually served indicated no bias toward the defendant. It was the trial court's role to weigh the evidence of potential community bias and to assess the credibility of the jurors during voir dire in determining whether the defendant could receive a fair trial. *Mendez, supra.*

To be entitled to a change in venue from the county the defendant must show

that the jurors were "unable to set aside their preconceived notions of guilt and to render a verdict based upon the evidence." *Sage v. State,* (1981) Ind., 419 N.E.2d 1286, 1287. The defendant has not proven that the jurors who actually served were biased or had prejudged his guilt. To the contrary, the record shows that each juror swore he or she could be impartial and fair. Based on the record of the pretrial hearing and the voir dire, it cannot be said that the trial court exceeded its discretion in denying the motion for a change of venue from Jay County. There was no trial court error.

## II.

█ Defendant next contends that the trial court erred in refusing to call the jurors in the reverse order in which the individuals' names were drawn for jury service. The defendant argues that in the interest of justice the jurors should have been called in reverse order because some of the jurors had already served on previous jury trials, thus having become jaded. However, Ind.Code § 33–15–22–1 (Burns 1975) mandates that jurors be called in the same order as their names were drawn for jury service. The defendant argues that this statute is flexible because the Vanderburgh Circuit Court is exempted from the above requirement, Ind.Code § 33–5–43–21 (Burns 1975). In addition, the defendant urges the Court to find an exception to this statute because the state did not allege or prove that it would be harmed by reversing the procedure.

█ We reject both arguments. The fact that the legislature has decided to exempt Vanderburgh Circuit Court from the language of Ind.Code § 33–15–22–1 (Burns 1975) does not mean that the statute is flexible. Such a conclusion would go against the express language of the statute. Ind.Code § 33–15–22–1 provides in pertinent part:

"Provided, That the order of names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box, as herein provided. The clerk shall at the time of drawing such prospective jurors, enter a list of names so drawn, upon the order-book of the court, in the same order in which the names are drawn from the box, and he shall attach his certificate of the fact. The clerk shall issue venires for such jurors as such courts may direct. The sheriff or bailiff shall then call the jurors to the jury box in the same order as that in which their names are drawn, from the box and certified thereto."

The use of the word *shall* has been held to be a clear expression of a mandatory duty. *Schwartzkopf v. State ex rel. Fettig,* (1965) 246 Ind. 201, 204 N.E.2d 342; *State ex rel. Simpson v. Meeker,* (1914) 182 Ind. 240, 105 N.E. 906. Because the language of the statute is mandatory the state did not need to allege or prove that reversing the order of jury selection would be prejudicial to the state. The selection process under Ind.Code § 33–15–22–1 is to insure jury selection on a random basis in order to prevent the possibility of bias. *Phillips v. State,* (1978) 268 Ind. 556, 376 N.E.2d 1143. Although failure to comply with the statute has been held to be harmless error when the noncompliance did not prejudice the defendant, *Phillips, supra,* we cannot find error when the trial court has followed the statutory language.

█ The defendant argues that the jury was conviction prone because several of the jurors had sat on previous juries. However, the defendant has offered no evidence, other than his own speculation, to prove this allegation. Prior jury service alone does not disqualify jurors from service. *Begley v. State,* (1981) Ind., 416 N.E.2d 824; *Brown v. State,* (1977) 266 Ind. 82, 360 N.E.2d 830. The trial court did not err in denying defendant's motion to call the jurors in reverse order.

## III.

The defendant also alleges that the evidence was insufficient to support the verdict because the state failed to prove beyond a reasonable doubt that he had sexual intercourse with the victim. The defendant argues that the victim's testimony was vac-

illating, contradictory, uncertain, and inherently incredible. He bases this argument on the fact that the victim first said that her attacker was white and then changed her story after "coercive interrogation by the Jay County Sheriff." The defendant also contends that the victim's failure to mention that the molestation occurred on an ironing board, until the time of trial, was inherently incredible. The defendant adds that the victim's testimony that the defendant had molested her before was incredible because medical testimony showed that the victim had not had sexual intercourse prior to the offense.

It is well established that, as a court of review considering the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be disturbed. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Duffy v. State,* (1981) Ind., 415 N.E.2d 715.

A conviction may be based on the uncorroborated testimony of the prosecuting witness if the testimony is sufficient to convince the trier of fact beyond a reasonable doubt. *Snider v. State,* (1980) Ind., 412 N.E.2d 230; *Dorbrzykowski v. State,* (1978) 269 Ind. 604, 382 N.E.2d 170. Here the victim's testimony was consistent at trial and she unequivocally identified the defendant as the man who molested her. Although she had previously stated that the attacker was white, these statements were made shortly after the offense when the victim was "shocky," frightened, and sleepy. Her statement to the sheriff was made while she was in the hospital and she quickly changed her statement at that time. There is no evidence that this change in identification was due to coercive interrogation. However, there is evidence that the defendant had told the victim not to tell anyone about the incident and that it was a secret.

The record also indicates that the victim was never asked where the crime occurred, other than that it was in her bedroom, and that the sheriff assumed the molestation had taken place on a bed. Furthermore, the victim testified that when the defendant had previously molested her, he had never "put it in as far." There was medical testimony that although there had not been substantial penetration prior to the current offense, it was possible there had been slight penetration.

The defendant is asking the Court to judge the victim's credibility and weigh the evidence which we will not do. *Snider, supra.* That credibility and the weight to be given the testimony were questions for the jury.

The victim's testimony was not inherently incredible and was sufficient to convince a trier of fact beyond a reasonable doubt. There was sufficient evidence to support the verdict.

## IV.

Next the defendant contends that the trial court's denial of his motion in limine, allowing the state to use a thirty-year prior conviction to impeach the defendant if he took the stand, denied him his right to present evidence and, thus, denied him due process of law.

First, we point out that the denial of a motion in limine is not error itself unless it occasions prejudice. Error occurs when the challenged evidence is improperly admitted and objection is made at trial. *Bennett v. State,* (1981) Ind., 423 N.E.2d 588; *Lagenour v. State,* (1978) 268 Ind. 441, 376 N.E.2d 475. Here the evidence was never admitted because the defendant did not take the stand. The defendant argues that he was prejudiced because he was denied his right to take the stand. However, the ruling did not deprive the defendant of his constitutional rights. He was free to take the stand and present evidence. If he chose to take the stand, he was then subject to the same tests of credibility as any other witness. *Geisleman v. State,* (1980) Ind., 410 N.E.2d 1293.

■■ The defendant also argues that the probative value of the prior conviction of rape and sodomy was outweighed by its potential prejudicial impact on the jury and, therefore, the trial court should not have allowed its use. The defendant contends that the prior conviction was too remote to be of any value and urges the Court to adopt Federal Rule of Evidence 609 which bars the use of prior convictions for impeachment purposes if they are more than ten years old. We recently addressed this argument in *Cox v. State,* (1981) Ind., 419 N.E.2d 1279, and determined that we would not adopt the federal rule in Indiana. *Id.* at 1283. The importance to be given the lapse of time from the defendant's prior conviction is "a question for the jury to determine as to the weight of the evidence and credibility of the witness." *Hall v. State,* (1976) 167 Ind.App. 604, 610, 339 N.E.2d 802. Furthermore, rape is one of the crimes that may be used for impeachment purposes. *Ashton v. Anderson,* (1972) 258 Ind. 51, 63, 279 N.E.2d 210, 217. Thus it was within the trial court's discretion to allow the state to use the prior conviction to impeach the defendant if he took the stand. There was no trial court error.

### V.

The defendant's final argument is that the twenty-year sentence is unreasonable in light of the mitigating evidence, and that the trial court's reasons for aggravating the sentence are only conclusionary and are unsupported by particular facts and circumstances.

■ The sentence for a Class B felony is imprisonment for a fixed term of ten years, not to be increased by more than ten years for aggravating circumstances and not to be reduced by more than four years for mitigating circumstances. Ind.Code § 35–50–2–5 (Burns 1979 Repl.). Whether the basic sentence will be increased or decreased due to aggravating or mitigating circumstances is within the trial court's discretion. *Logsdon v. State,* (1980) Ind., 413 N.E.2d 249; *McCawley v. State,* (1980) Ind., 409 N.E.2d 594. However, if the trial court either increases or decreases the basic sentence, the court is required to indicate in the record those factors considered to be aggravating or mitigating circumstances. *Gardner v. State,* (1979) 270 Ind. 627, 388 N.E.2d 513.

■ Here the trial judge heard testimony from witnesses on the defendant's character and received statements from the defendant and the state during the presentence hearing. The record shows that the judge considered this testimony, the specifics of the crime, the resulting injury to the victim, and the nature of the offense. The judge found aggravating circumstances because the victim had suffered serious bodily harm resulting in surgery, and "because of the atrocious nature of what happened," a lesser sentence would be improper. These are appropriate aggravating circumstances under Ind.Code § 35–4.1–4–7(a), (c), (d) (Burns 1979 Repl.). Under the standard of review set forth in our Rules for the Appellate Review of Sentences we cannot say that the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R. App.Rev.Sen. 2(1); *see Gardner, supra.*

For all of the foregoing reasons, there was no error and the judgment and sentence of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, dissenting.

The defendant made a motion to bar the use by the prosecution of evidence of his thirty year old conviction for rape and sodomy. In ruling upon this motion the trial court made two distinct determinations which can be paraphrased as follows:

1. This conviction is so old and stale and remote that it does not tend to prove a depraved sexual instinct at the time of the present alleged offense, and is completely irrelevant and inadmissible as proof of any matter which the prosecu-

tion is called upon to prove to make a *prima facie* case.

2. This same conviction while old and stale and remote does tend to prove a lack of credibility as a witness at the present time, and is completely relevant and admissible for purpose of impeachment if the defendant testifies in his own defense.

It would appear logical to me that if this old conviction is not probative evidence of appellant's present inclination to put his sexual self-interest before the rights of others, as believed by the trial court and acceded in by the trial prosecutor, then by the same token it can reveal nothing about his inclination to place his self-interest above his duty to others to tell the truth while a witness on the stand. Indeed a persuasive argument can be made that these two threads of relevance, while tenuous in any event, are not of equal strength, and that the first would be more resistive of dissolution through the action of time than the second.

There is reason in the record to believe that the trial court was of the opinion that he had no discretion at all to bar the use of this prior conviction for impeachment. *Hall v. State,* (1976) 167 Ind.App. 604, 339 N.E.2d 802, cited with approval in *Cox v. State,* (1981) Ind., 419 N.E.2d 1279, would appear to lend support to his opinion. However, the majority declares the law to be otherwise, and I believe rightly so. Indiana Code § 34–1–14–14 renders prior convictions for infamous crimes relevant and admissible for impeachment. The statute however cannot be considered mandatory in the sense that it binds the hands of a sitting judge so as to preclude him from declaring a particular conviction for an infamous crime inadmissible on the basis of individual circumstances. A judge in the conduct of a particular trial and in execution of his judicial power, must have the authority to screen evidence. He must be the final arbiter of whether there is a rational basis for the admission of a particular piece of evidence in the context of an actual trial even though the Legislature may have declared that type of evidence to be relevant and admissible. To admit evidence against the accused in a criminal case where the lack of relevancy is demonstrable would be unfair and a denial of due process. To me it is inconceivable that knowledge of a thirty year old conviction for rape, standing alone in the youth of a person, without proof of a continuation of criminal misconduct, furthers the credibility determining goal of the trier of fact one iota. There is more to thirty years of a person's life than simply the lapse of time. *Hall, supra; People v. Henneman,* (1944) 323 Ill.App. 124, 54 N.E.2d 745.

I would therefore reverse this conviction and order a new trial at which the prosecution would be prohibited from using appellant's prior conviction for impeachment.

PRENTICE, J., concurs.